IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Asheville Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| **ILUMIVU, INC.,** | ) | Case No. 24-10169 |
| | ) | |
| Debtor. | ) | |

## PLAN OF REORGANIZATION

Ilumivu, Inc. (the "Debtor") submits this Plan of Reorganization pursuant to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

## DISCLOSURES REQUIRED BY 11 U.S.C. § 1190

The Debtor is a Delaware corporation organized in 2009, which maintains its principal place of business in Arden, North Carolina. The Debtor provides software and technological applications that enable consumers and researchers to monitor, analyze, and screen for various health conditions such as diabetes, hypertension, cardiac disease, sleep apnea, cognitive and behavioral disorders, and others. The Debtor's data collection applications work in conjunction with other well-known consumer technology products, including smart watches and mobile telephones.

The Debtor's gross revenues from 2022 to the present have hovered around $2 million per annum. However, sales are unpredictable throughout the year, which has left the Debtor unable to make regular debt service payments to its secured lenders while simultaneously meeting its ongoing operational costs. The Debtor filed for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code on September 16, 2024. GreerWalker LLP serves as the Court-appointed Financial Advisor to the Debtor, and Robert Mays, Esq. is the appointed Subchapter V Trustee.

Health Catalyst Capital Annex Fund I, L.P. and Pisgah Fund LLC (together, the "Lenders") hold blanket liens on substantially all of the Debtor's assets securing an aggregate indebtedness of approximately $1,255,000.00. The Lenders also hold unsecured claims in the amount of approximately $550,000.00. The Debtor scheduled additional unsecured trade payables of roughly $500,000.00 (excluding unsecured deficiency claims and claims for damages arising from rejection of executory contracts).

Through this Plan, the Debtor intends to market its operating assets (the "Sale Assets") for sale free and clear of all liens, claims, interests, and encumbrances (with all such liens, claims, interests, and encumbrances transferring to the proceeds) in a competitive auction format pursuant to sections 1123(a)(5) and (b)(4) of the Bankruptcy Code.

The Lenders, who also hold a 34.1% ownership stake in the Debtor, offered to make an initial stalking-horse offer of $1,356,131.00 for the Sale Assets. The Lenders' offer consists of a credit bid of their secured claims against the Estate of $1,256,131.00 and cash in the amount of $100,000.00. The Lenders' stalking-horse offer is subject to higher and better bids.

Contemporaneously with the filing of this Plan, the Debtor has moved the Court for the entry of orders approving certain overbid, auction, and notice procedures, and scheduling a hearing for approval of a final sale. The Debtor will continue to operate as a going concern during the sale process to maximize the value of its assets, but it will cease business operations upon the closing of the Asset Sale. It is anticipated that the completion of the sale process will exhaust the Debtor's cash reserves; however, funds derived from the Asset Sale and recoveries from the Estate's Causes of Action will be available to fund distributions to Creditors. All Allowed Secured Claims against the Estate will be satisfied from the sale proceeds. Distributions of remaining funds to the holders of Allowed Unsecured Claims will be paid thereafter, on the final Distribution Date.

As shown in the Financial Projections attached as <u>Exhibit A</u>, the Debtor will be able to meet its expenses during the sale and confirmation processes from operating revenues. Further, as shown in the Liquidation Analysis attached as <u>Exhibit B</u>, the Plan will result in payments to Creditors equal to or greater than those Creditors would receive under Chapter 7 of the Bankruptcy Code. You should consult your attorney, accountant, or financial advisor if you have any questions about the Financial Projections or the Liquidation Analysis.

## ARTICLE I
## DEFINITIONS

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

1.1   <u>Administrative Claim</u>. Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently. Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business as a debtor in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor as debtor in possession, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, including any funds owed to the Trustee, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of Title 28, United States Code, if applicable, and (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code.

1.2     <u>Administrative Claims Bar Date</u>.  The date thirty (30) days after the Confirmation Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court.  The Administrative Claims Bar Date shall not apply to fees and expenses of the Debtor's Professionals incurred after the Confirmation Date.

1.3     <u>Allowed Administrative Claim</u>.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.4     <u>Allowed Claim</u>.  Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in its Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim), or (iii) any Claim as to which the Bankruptcy Court has entered a Final Order allowing the Claim.  A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim.  The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.  Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.5     <u>Asset Sale</u>.  The sale of the Sale Assets pursuant to the Bid Procedures Order and the Sale Order, which shall be free and clear of all liens, claims, interests, and encumbrances (with all such liens, claims, interests, and encumbrances transferring to the proceeds) pursuant to sections 1123(a)(5) and (b)(4) of the Bankruptcy Code.

1.6     <u>Assumed Agreement</u>.  The Debtor's unexpired leases and other executory contracts that are being assumed pursuant to the Plan.

1.7     <u>Avoidance Action</u>.  Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

1.8     <u>Avoidance Action Claims</u>.  Claims asserted by parties pursuant to sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtor against such parties.

1.9     <u>Ballot</u>.  The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

1.10    <u>Bankruptcy Administrator</u>.  The United States Bankruptcy Administrator for the Western District of North Carolina.

1.11    <u>Bankruptcy Code</u>.  The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

1.12    <u>Bankruptcy Court</u>.  The United States Bankruptcy Court for the Western District of North Carolina.

1.13    <u>Bankruptcy Rules</u>.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.14    <u>Bid Procedures Order</u>.  That order of the Bankruptcy Court granting the Debtor's *Motion for Approval of Bid Procedures and Final Sale in Conjunction with Plan of Reorganization*, approving procedures to govern the conduct of an auction of the Sale Assets as described in section 7.1 of the Plan.

1.15    <u>Business Day</u>.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.16    <u>Cash</u>.  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.17    <u>Cause of Action</u>.  Any right, claim, proof of claim, motion, objection, and/or other legal cause of action, including, but not limited to Avoidance Actions, which a trustee, the Debtor and/or the Reorganized Debtor may pursue in any court of competent jurisdiction or other forum.

1.18    <u>Chapter 11 Case</u>.  The Chapter 11 bankruptcy case of Ilumivu, Inc. (Case No. 24-10169), pending in the Bankruptcy Court.

1.19    <u>Claim</u>.  Any right to payment from the Estate or the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate or the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.20    <u>Class</u>.  A classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.21    <u>Closing Date</u>.  The Business Day following confirmation of the Plan upon which the Debtor and the purchaser close the Asset Sale.

1.22    <u>Confirmation Date</u>.    The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.23    <u>Confirmation Hearing</u>.    The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.24    <u>Confirmation Order</u>.    An order of the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.25    <u>Contingent Claim</u>.    A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.26    <u>Creditor</u>.    Any Person that holds a Claim against the Estate.

1.27    <u>CRO</u>.    The Chief Restructuring Officer, GreerWalker LLP.

1.28    <u>Debtor</u>.    Ilumivu, Inc.

1.29    <u>Disputed Claim</u>.    A Claim which is the subject of a timely objection interposed by the Debtor, if at such time such objection remains unresolved; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; provided, further, that the Debtor, in its sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.30    <u>Distribution Date</u>.    That Business Day following the Confirmation Date when all Net Estate Cash has been collected, including, but not limited to, the proceeds of any Causes of Action, including Avoidance Actions, and upon which the Reorganized Debtor is prepared to distribute the same to the holders of Allowed Unsecured Claims as set forth in this Plan.

1.31    <u>Effective Date</u>.    The Business Day on which all of the conditions set forth in Article 10 of this Plan shall have been satisfied or waived, unless extended by order of the Bankruptcy Court.

1.32    <u>Equity Interest</u>.    Any interest in the Debtor represented by any class or series of capital stock or membership interests of the Debtor prior to the Petition Date, and any and all warrants, options, convertible, or exchangeable securities, subscriptions, rights (including any preemptive rights), appreciation rights, calls, or commitments of any character whatsoever relating to any such interest in the Debtor.  Equity Interests also include, without limitation, all Claims arising from rescission of a purchase or sale of an Equity Interest, for damages arising from the purchase or sale of such an Equity Interest, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.33    <u>Estate</u>.    The bankruptcy estate of the Debtor, including all interests in property that the Debtor holds.

1.34    <u>Final Order</u>.    An order that (a) is not an interim order, and (b) is not subject to a stay.

1.35    Financial Projections.  The forecast of the Reorganized Debtor's revenues and expenses as shown in Exhibit A to the Plan.

1.36    General Unsecured Claim.  Any Unsecured Claim, other than an Administrative Claim, a Priority Tax Claim, or an Other Priority Claim.  Subject to the provisions of this Plan, Allowed General Unsecured Claims may include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

1.37    HCC.  Health Catalyst Capital Annex Fund I, L.P.

1.38    Interest.  Any right, claim, or entitlement arising out of or against an Equity Interest.

1.39    Judgment.  A judgment that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.40    Liquidation Analysis.  The hypothetical forecast of distributions to creditors if this case were converted to Chapter 7 of the Bankruptcy Code as shown in Exhibit B to the Plan.

1.41    Net Estate Cash.  Remaining Cash of the Estate from whatever sources after satisfaction of all Allowed Secured Claims, Allowed Administrative Claims, and Allowed Priority Tax Claims as set forth in the Plan.

1.42    Net Sale Proceeds.  All proceeds of the Asset Sale, less reasonable and customary closing costs and expenses, and less any costs and expenses imposed under section 506(c) of the Bankruptcy Code.

1.43    Other Priority Claims.  Any Claim to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code, other than Administrative Claims and Priority Tax Claims.

1.44    Person.  An individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

1.45    Petition Date.  September 16, 2024, the date the Chapter 11 Case was filed.

1.46    Pisgah.  Pisgah Fund LLC.

1.47    Plan.  This Plan of Reorganization, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

1.48    Priority Tax Claim.  Any Claim arising prior to the Petition Date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.49    Pro Rata Share.  As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.50    Professional.  Any attorney, accountant, appraiser, auctioneer, broker, or other professional person retained and employed by the Estate in the Chapter 11 Cases in accordance with sections 327 and/or 328 of the Bankruptcy Code.

1.51    Reorganized Debtor.  The Debtor, as reorganized and re-vested with all assets of the Estate pursuant to this Plan.

1.52    Sale Assets.  All tangible or intangible assets of the Debtor defined as "Sale Assets" in the Asset Purchase Agreement (provided, however, the Sale Assets shall not include any "Excluded Assets"), as approved by the Bankruptcy Court and incorporated in the Sale Order.

1.53    Sale Motion.  The Debtor's *Motion for Approval of Bid Procedures and Final Sale in Conjunction with Plan of Reorganization*.

1.54    Sale Order.  An order of the Bankruptcy Court granting the Debtor's *Motion for Approval of Bid Procedures and Final Sale in Conjunction with Plan of Reorganization*, approving the Asset Sale as described in section 7.1 of the Plan.

1.55    Schedules.  The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtor in the Chapter 11 Cases under section 521 of the Bankruptcy Code.

1.56    Secured Claim.  A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to section 506(a) or 1111(b) of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.57    Taxes.  All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

1.58    Trustee.  Robert Mays, Esq., who was appointed as trustee in the Bankruptcy Case pursuant to Section 1183 of the Bankruptcy Code.

1.59    Unsecured Claim.  A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.60    Unsecured Deficiency Claim.  A Claim of a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy

Court pursuant to section 506(a) of the Bankruptcy Code, by stipulation, or as a result of the Sale, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code.

1.61 <u>Voting Deadline</u>. The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.62 <u>Other Definitions</u>. Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein. Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan. The word "including" shall mean "including without limitation."

## ARTICLE 2
## PROVISIONS REGARDING ALLOWED ADMINISTRATIVE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1 ***Administrative Claims and Priority Tax Claims are Not Classified in this Plan***. Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote to accept or reject the Plan. The treatment of and consideration to be received by holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims. The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2 ***Administrative Claims Bar Date***. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of the Trustee, must be filed and served no later than thirty (30) days after the Confirmation Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals.

2.3 ***Treatment of Administrative Claims***. Except as provided herein or to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) on (a) the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to their terms, be paid when otherwise due.

2.4     *Treatment of Priority Tax Claims*.  Each holder of an Allowed Priority Tax Claim shall be paid the allowed amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) on the Distribution Date, but in any event not later than five (5) years after the Petition Date.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1     *Class 1:  Allowed Secured Tax Claims*

### 3.1.1      *Classification*

Class 1 consists of all Allowed Secured Tax Claims.

### 3.1.2      *Treatment*

These Claims shall be treated as secured obligations of the Reorganized Debtor.  Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, within 30 days after the Closing Date; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Tax Claim and the Reorganized Debtor; or (c) on the Distribution Date, but in any event not later than five (5) years after the Petition Date.  Each holder of an Allowed Secured Tax claim shall retain its existing liens, which shall retain the same priority that existed on the Petition Date, until its Allowed Class 1 Claim is satisfied as set forth in the Plan.

### 3.1.3      *Impairment and Voting*

Class 1 is impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.  For purposes of voting, each holder of a Secured Tax Claim shall be considered the sole member of a separate Class.

3.2     *Class 2:  Allowed Secured Claim of HCC*

### 3.2.1      *Classification*

Class 2 consists of the Allowed Secured Claim of HCC.

### 3.2.2      *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor.  To the extent the Allowed Class 2 Claim is not extinguished via a credit bid for the Sale Assets, following the closing of the Asset Sale the Net Sale Proceeds attributable to the Sale Assets in which HCC holds a security interest (subject to prior liens, if any) shall be distributed to HCC (*pari passu* with distributions on account of the Allowed Secured Claim of Pisgah) up to the full amount of its Allowed Secured Claim within 30 days after the Closing Date.  The foregoing

payment shall be in full and complete satisfaction of the Allowed Secured Claim(s) of HCC. Any remaining and Allowed Unsecured Deficiency Claim of HCC shall be treated in Class 6. HCC shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code until the Allowed Class 2 Claim is satisfied as set forth herein.

### 3.2.3    *Impairment and Voting*

Class 2 is impaired by the Plan. The holder of the Class 2 Claim is entitled to vote to accept or reject the Plan.

### 3.3    *Class 3:  Allowed Secured Claim of Pisgah*

#### 3.3.1    *Classification*

Class 3 consists of the Allowed Secured Claim of Pisgah

#### 3.3.2    *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor.  To the extent the Allowed Class 3 Claim is not extinguished via a credit bid for the Sale Assets, following the closing of the Asset Sale the Net Sale Proceeds attributable to the Sale Assets in which Pisgah holds a security interest shall be distributed to Pisgah (*pari passu* with distributions on account of the Allowed Secured Claim of HCC) up to the full amount of its Allowed Secured Claim within 30 days after the Closing Date.  The foregoing payment shall be in full and complete satisfaction of the Allowed Secured Claim of Pisgah.  Any remaining and Allowed Unsecured Deficiency Claim of Pisgah shall be treated in Class 6.  Pisgah shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code until the Allowed Class 3 Claim is satisfied as set forth herein.

#### 3.3.3    *Impairment and Voting*

Class 3 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

### 3.4    *Class 4:  Allowed Other Secured Claims*

#### 3.4.1    *Classification*

Class 4 consists of all Allowed Secured Claims other than Allowed Secured Tax Claims, the Allowed Secured Claim of HCC, and the Allowed Secured Claim of Pisgah.

#### 3.4.2    *Treatment*

These Claims shall be treated as secured obligations of the Reorganized Debtor.  To the extent the Allowed Class 4 Claims are not extinguished via a credit bid for the Sale Assets,

following the closing of the Asset Sale the Net Sale Proceeds attributable to the Sale Assets in which the holder of an Allowed Class 4 Claim holds a security interest (subject to prior liens, if any) shall be distributed to such holder up to the full amount of its Allowed Secured Claim within 30 days after the Closing Date.  The foregoing payment shall be in full and complete satisfaction of such holder's Allowed Other Secured Claim. Any remaining and Allowed Unsecured Deficiency Claim of such holder shall be treated in Class 6.  The holder of an Allowed Other Secured Claim shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to Section 1129(b)(2)(A) of the Bankruptcy Code until its Allowed Class 4 Claim is satisfied as set forth herein.

### 3.4.3        *Impairment and Voting*

Class 4 is impaired by the Plan. The holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

### 3.5        *Class 5:  Allowed Other Priority Claims*

### 3.5.1        *Classification*

Class 5 consists of all Allowed Other Priority Claims.

### 3.5.2        *Treatment*

These Claims shall be treated as unsecured obligations of the Reorganized Debtor.  On the Distribution Date, holders of Allowed Other Priority Claims shall be paid their Pro Rata Shares of the Net Estate Cash up to the full amount of their respective Claims as of the Petition Date.

### 3.5.3        *Impairment and Voting*

Class 5 is impaired by the Plan. The holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

### 3.6        *Class 6:  Allowed General Unsecured Claims*

### 3.6.1        *Classification*

Class 6 consists of all Allowed General Unsecured Claims, including, but not limited to, Allowed Unsecured Deficiency Claims.

### 3.6.2        *Treatment*

These Claims shall be treated as unsecured obligations of the Reorganized Debtor.  On the Distribution Date, holders of Allowed General Unsecured Claims shall be paid their Pro Rata Shares of the Net Estate Cash remaining after satisfaction of all Claims of higher priority, up to the allowed amounts of their respective Claims as of the Petition Date.

### 3.6.3  *Impairment and Voting*

Class 6 is impaired by the Plan. The holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

### 3.7  ***Class 7: Equity Interests in the Debtor***

### 3.7.1  *Classification*

Class 7 consists of consists of the Equity Interests in the Debtor.

### 3.7.2  *Treatment*

All Equity Interests in the Debtor held prior to the Petition Date shall be retained in the Reorganized Debtor, provided that following the Effective Date the Reorganized Debtor (acting at the sole direction of the CRO) shall conduct no business except to take those actions necessary to give full effect to the terms of the Plan.

### 3.7.3  *Impairment and Voting*

Class 7 is impaired by the Plan. The holders of the Class 7 Interests are entitled to vote to accept or reject the Plan.

### **ARTICLE 4**
### **ACCEPTANCE OR REJECTION OF THE PLAN**

4.1    ***Impaired Classes Vote.***    Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

4.2    ***Acceptance by Classes of Claims.***    This Plan shall qualify for confirmation pursuant to Sections 1191(a) and 1129(a)(8) as a consensual plan should no holder of an Allowed Claim vote to reject the Plan.

4.3    ***Designation of Classes Entitled to Vote.*** Holders of Claims and Interests in those Classes which are impaired are entitled to vote on the Plan.

4.4    ***Nonconsensual Confirmation.***    With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, *and the filing of this Plan shall constitute a motion for such relief.*

# ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1      ***Assumption/Rejection.***

Through this Plan, the Debtor assumes the following unexpired leases and/or executory contracts:

| Any and all insurance policies of the Debtor and/or Debtor in Possession |
| --- |

Any executory contract or unexpired lease assumed pursuant to the Plan shall be fully enforceable by the Reorganized Debtor in accordance with the terms thereof, and shall include all written modifications, amendments, and supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises.

Notwithstanding the forgoing, the Debtor may move to assume, or to assume and assign, any unexpired lease or executory contract at any point on or before the Confirmation Date.

All payments, including all cure payments, adequate assurance or compensation for actual pecuniary loss, that are due or required to be paid or provided by Sections 365(b)(1)(A)-(C) of the Bankruptcy Code (collectively the "Cure Payments") for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtor, shall be made by the Reorganized Debtor on or before the Distribution Date.  The Debtor hereby gives notice that, except as set forth in the Plan, there are no Cure Payments due with respect to any executory contracts and unexpired leases to be assumed under the Plan.  Any non-debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to assumption of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must file a written objection to the assumption of such executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan.

Unless the non-debtor party to any executory contract or unexpired lease to be assumed files and serves on the Debtor and its counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Confirmation Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtor and the Reorganized Debtor, in connection with such assumption of the executory contract or unexpired lease unless otherwise

set forth in this Plan. Any Claims for Cure Payments not Filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtor, its Estate, the Reorganized Debtor, and its assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof unless provided otherwise in this Plan. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and (b) in the discretion of the Debtor, the Debtor (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtor may reject the executory contract or unexpired lease.  The Reorganized Debtor shall have ten (10) Business Days after any order determining the amount of a disputed Cure Payment in which to reject of such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected.

Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date, is assumed in this Plan, or has been previously assumed by the Debtor in Possession pursuant to an order of the Bankruptcy Court, or that is the subject of a pending motion to assume as of the Confirmation Date, shall be deemed rejected by the Debtor as of the Petition Date pursuant to sections 365 and 1123 of the Bankruptcy Code.

5.2      **Effect of Confirmation Order on Executory Contracts and Unexpired Leases.** Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection of all executory contracts and unexpired leases which have not been assumed by the Debtor pursuant to an order of the Bankruptcy Court or that are not the subject of a pending motion to assume as of the Confirmation Date.  Any such rejection shall be effective as of the day before the Petition Date, and all executory contracts and unexpired leases so rejected shall be conclusively deemed burdensome to and not in the best interest of the Estate.

5.3      **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.**  Any Claims for damages arising from rejection of an executory contract or unexpired lease under this Plan must be filed no later than 21 days after the Confirmation Date or be forever barred and unenforceable against the Debtor and the Estate, and the holders of such Claims shall receive no distributions under the Plan.

## ARTICLE 6
## DISTRIBUTIONS UNDER THE PLAN

6.1      **Distributions Under the Plan.**  The Reorganized Debtor or any distribution agent the Reorganized Debtor may retain shall make all distributions to the holders of Allowed Claims and Allowed Interests that are required under this Plan.  If any litigation now pending is resolved by Final Order or settlement, and the Debtor is ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any

interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.  To the extent this Plan is confirmed pursuant to Section 1191(b), this Plan invokes Section 1194(b) such that the Reorganized Debtor, and not the Trustee, shall have the obligation to make payments to holders of Allowed Claims.

6.2 **Delivery of Distributions.** Distributions to a holder of an Allowed Claim or Allowed Interest shall be made at the address of such holder as indicated in the Debtor's records. In the event that any such distribution is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Reorganized Debtor has determined such then current address, provided, however, that if any distribution remains unclaimed for 60 days after the date of such distribution, such distribution shall be deemed unclaimed property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtor.  In such event, the Claim of the holder for such distribution shall no longer be deemed an Allowed Claim, and such holder shall be deemed to have waived its rights to such distribution under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof.

6.3 **Third-Party Agreements.** All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

6.4 **Manner of Payment Under the Plan.** At the option of the Reorganized Debtor, any payment to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

6.5 **No Fractional Distributions.** For purposes of distributions, Cash distributions may be rounded up or down, as applicable, to the nearest whole dollar.

## ARTICLE 7
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

7.1 **Sources of Funding; Asset Sale.**  The Plan contemplates that distributions to Creditors will be funded by the proceeds of the Asset Sale and recoveries from the prosecution of Causes of Action (including, but not necessarily limited to, Avoidance Actions).  The Sale Assets shall be sold free and clear of all liens, claims, interests, and encumbrances (with all such liens, claims, interests, and encumbrances transferring to the proceeds) pursuant to sections 1123(a)(5) and (b)(4) of the Bankruptcy Code.  The Debtor has moved contemporaneously with the filing of this Plan for approval of procedures governing the Asset Sale.

7.2 **Appointment of CRO; Related Injunction.**  Upon confirmation of the Plan, GreerWalker LLP shall be appointed by the Bankruptcy Court to serve as Chief Restructuring Officer ("CRO") of the Reorganized Debtor pursuant to Section 327 of the Bankruptcy Code upon the same terms and conditions governing its pre-confirmation appointment as Financial

Advisor to the Debtor.  In its continuing role as CRO, GreerWalker LLP shall exercise sole, autonomous decision-making authority over the Reorganized Debtor, the prosecution and/or settlement of Causes of Action, including, but not limited to, Avoidance Actions, and the management of the Reorganized Debtor's affairs generally until closure of the Chapter 11 Case, subject to the Bankruptcy Court's supervision.  All members, managers, officers, directors, employees, agents, insiders, and holders of Equity Interests in the Debtor and/or the Reorganized Debtor shall be restrained, enjoined, stayed and otherwise barred from exercising dominion or control over, and from taking any action with respect to, the property of the Debtor or the Reorganized Debtor to the exclusion of the comprehensive rights and authority of the CRO as set forth in the Plan.  Further, all such persons shall cooperate with the CRO in the performance of its mandate pursuant to the Plan and shall not interfere therewith.

7.3    *Authority to Act Following Confirmation Date.* Upon confirmation of this Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtor is authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

7.4    *Authority to Act Following Effective Date.* Upon the Effective Date of the Plan, the Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, articles, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

7.5    *Status of Liens of Secured Tax Claims and Other Lien Claimants.* Unless otherwise provided in this Plan or by Order of the Bankruptcy Court, on the Effective Date, all existing liens held by any Class or Classes on the Debtor's assets shall retain the same priority that existed on the Petition Date, provided that such liens shall not extend to property acquired by the Debtor after commencement of the Chapter 11 Case as set forth in section 552 of the Bankruptcy Code.  Section 552 of the Bankruptcy Code shall continue to apply to all such liens and security interests following confirmation of the Plan. All other liens and encumbrances not specifically provided for in the Plan shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.  Post-confirmation, the Reorganized Debtor is permitted to liquidate any assets subject to a lien as provided herein.  Any creditor holding such a lien shall release the same immediately upon its receipt of the proceeds of such sale up to the full amount of its Allowed Secured Claim related to the asset sold.

7.6    *Effectuating Documents and Further Transactions.* The Debtor and the Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, articles, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtor and the Reorganized Debtor, to

effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

## ARTICLE 8
## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

8.1     *Objections to Claims and Interests; Prosecution of Disputed Claims and Interests.*  The Debtor and, after the Effective Date, the Reorganized Debtor, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor or Reorganized Debtor, as applicable, or compromised and settled in accordance with the business judgment of the Debtor or Reorganized Debtor, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be filed no later than one year after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtor upon *ex parte* motion.

8.2     *Estimation of Disputed Claims and Interests.* The Debtor and, after the Effective Date, the Reorganized Debtor, may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtor or the Reorganized Debtor have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

8.3     *No Distribution on Account of Disputed Claims and Interests.* Notwithstanding anything else contained in this Plan, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.

## ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

9.1     *Vesting of Assets and Retained Causes of Action.*  All assets of the Debtor and Debtor in Possession shall vest in the Reorganized Debtor on the Effective Date free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances except as otherwise expressly provided in this Plan or in the Confirmation Order, but shall remain property of the Estate until closure of the Chapter 11 Case.  Subject to the terms of the Plan, the Confirmation Order, and any other applicable order of the Bankruptcy Court, the Reorganized Debtor may operate its business and may freely own, use, acquire and dispose of its assets.  The Reorganized Debtor shall retain all rights and is authorized to commence and pursue, as it deems appropriate, any and all claims and Causes of Action, including, but not limited to Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and Causes of Action specified in the Plan.

9.2     ***Binding Effect.*** Subject to the occurrence of the Effective Date as set forth in Article 10 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtor and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

9.3     ***Discharge of the Debtor.*** Except as otherwise provided in this Plan or the Confirmation Order, and subject to Sections 1141, 1181(c), and 1192 of the Bankruptcy Code, the rights afforded in this Plan and the treatment of Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtor, the Debtor in Possession, the Reorganized Debtor or the assets, interests in, or property of the Debtor, the Debtor in Possession or the Reorganized Debtor of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtor and/or the Debtor in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtor's officers, directors, employees, or agents, or any conduct for which the Debtor may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtor shall be responsible only for (a) those payments and distributions expressly provided for or due under this Plan and (b) Claims and Interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Persons are precluded, enjoined, and forever barred from asserting against the Debtor, the Debtor in Possession, or the Reorganized Debtor, or the assets of, properties of, Interests in, or property of the Debtor, the Debtor in Possession, or the Reorganized Debtor of any nature whatsoever, any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan.

9.4     ***Terms of Certain Injunctions.*** All injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case, whether pursuant to the provisions of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, including, but not limited to, the automatic stay of 11 U.S.C. § 362, shall remain in full force and effect through the later of the Distribution Date or closure of the Chapter 11 Case, and thereafter if so provided by this Plan, the Confirmation Order, their own terms, or applicable law.  The Debtor and/or the Reorganized Debtor may seek such further orders as it deems necessary or appropriate to effect the injunctive relief referenced herein.

9.5     ***No Successor Liability.*** Except as otherwise stated in the Plan or Confirmation Order, neither the Debtor nor the Reorganized Debtor will have any responsibilities for any liabilities or obligations of the Debtor or any of the Debtor's past or present subsidiaries relating to or arising out of the operations of or assets of the Debtor or any of the Debtor's past or present subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. The Reorganized Debtor shall have no successor or transferee liability of any kind or character, for any Claims; provided, however, that the Reorganized Debtor shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in this Plan.

9.6     ***Preservation of Claims Not Settled or Released.*** Without limiting any other provisions of this Plan, unless a claim, objection, defense or Cause of Action against a Creditor or other Person is expressly and specifically waived, released, transferred, compromised or settled in this Plan or in any Final Order, the same is preserved for pursuit by the Reorganized Debtor after the Effective Date. No preclusion doctrine, including, without limitation, res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims, objections, defenses, or Causes of Action upon or after the Confirmation Date or the Effective Date of the Plan. The Reorganized Debtor reserves the right to pursue or adopt any claims, objections, defenses, and/or Causes of Action of the Debtor or Debtor in Possession as trustee for or on behalf of its Creditors, not specifically waived, released, compromised or settled in this Plan or any Final Order against any Person, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtor shall be a representative of the Estate appointed for the purposes of pursuing any and all such claims, objections, defenses, and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any Person to whom the Debtor has incurred an obligation (on account of services, purchase or sale of goods, tort, breach of contract, or otherwise), or who has received services or otherwise transacted business with the Debtor in any capacity should assume that such obligation, transfer, or other transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of a Cause of Action, claim, demand, or objection after the Effective Date, whether or not (a) such Person has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Person's proof of claim has been objected to, (c) such Person's Claim was included in the Debtor's Schedules, or (d) such Person's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

### ARTICLE 10
### THE EFFECTIVE DATE OF THE PLAN

10.1   ***Conditions to Occurrence of Effective Date of Plan.*** The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date as defined herein. The Effective Date shall occur upon the later of: (a) satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be

taken contemporaneously with, or immediately upon, the occurrence of the Effective Date), or (b) the 30th day following entry of the Confirmation Order:

10.1.1 The Confirmation Order shall have been entered by the Bankruptcy Court and shall have become a Final Order.

10.1.2 All actions, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, if any, shall have been executed and delivered by any applicable non-debtor parties in form and substance satisfactory to the Debtor.

10.1.3  All fees and expenses due to or incurred by Professionals for the Debtor through the Effective Date not previously paid pursuant to interim or Final Orders shall have been paid into and shall be held in trust, free and clear of Liens, Claims and encumbrances (other than the rights of such Professionals) until due and payable in accordance with applicable court order.

10.2    ***Revocation of Confirmation Order or Withdrawal of Plan.*** The Debtor may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case. If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur as set forth in Article 10, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court. In such event, the Plan and the Confirmation Order shall be of no further force or effect and, the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtor's respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtor's rights and claims against all Entities shall be fully preserved and nothing contained herein shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other persons or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor or any other persons.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1    ***Remedies.***

(a)  Exclusive Remedy Upon Default by Reorganized Debtor: Upon default by the Reorganized Debtor with respect to any obligation imposed by the Plan, any affected holder of an Allowed Claim may, as its exclusive remedy, seek damages for such unpaid Claim in any court of competent jurisdiction upon 30 days' prior written notice to the Reorganized Debtor of its intent to do so.  The Reorganized Debtor may cure any such default by making payment to the affected holder of an Allowed Claim as otherwise required by the Plan within such 30-day period.

(b)  Reorganized Debtor's Remedies in Event of Improper Action by Creditor. In the event that a Creditor attempts to invoke any remedy provided for in this Plan and the

Reorganized Debtor challenges such action and is the prevailing party, the Reorganized Debtor shall be entitled to an award of costs and its attorney's fees incurred in defense of the Creditor's actions.

11.2 *Notice.* Any notice required or permitted to be provided to the Debtor or Reorganized Debtor under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

Moon Wright & Houston, PLLC.
c/o Richard S. Wright
212 North McDowell Street, Suite 200
Charlotte, North Carolina 28204

11.3 *Headings.* The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

11.4 *Governing Law*. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

11.5 *Additional Documents.* The Debtor and/or Reorganized Debtor has the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtor deems necessary or appropriate in its reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

11.6 *Compliance with Tax Requirements.* In connection with this Plan, the Debtor and the Reorganized Debtor will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.7 *Exemption from Transfer Taxes.* Pursuant to Section 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such section of the Bankruptcy Code.

11.8 *Further Authorizations.* The Debtor, and after the Effective Date, the Reorganized Debtor, may seek such orders, judgments, injunctions, and rulings as either deems necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan including, but not limited to, orders seeking authority to make interims distributions to any Class or Classes of Creditors prior to the Distribution Date.

11.9 ***Successors and Assigns.*** The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Person.

11.10 ***Modification and Amendment of the Plan.*** Subject to Section 1193 of the Bankruptcy Code and Bankruptcy Rule 3019, this Plan may be amended or modified by the Debtor, and, after the Effective Date, by the Reorganized Debtor.

11.11 ***Termination of Trustee.*** The services of the Trustee shall be terminated upon the filing a notice of substantial consummation by the Debtor or Reorganized Debtor on the docket in the Bankruptcy Case.

## ARTICLE 12
## RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

12.1 ***Executory Contracts and Unexpired Leases.*** To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2 ***Causes of Action.*** To determine any and all Causes of Action, including, but not limited to, all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtor after the Effective Date. Further, the Bankruptcy Court shall retain exclusive jurisdiction over any and all issues related to the Asset Sale, the adjudication of which shall be governed by the standards applicable to Sections 1123 and 1129 of the Bankruptcy Code.

12.3 ***Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.*** To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan or by prior, Final Order of the Bankruptcy Court), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

12.4    *Enforcement/Modification of Plan.*

12.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3 To hear and determine other matters that may be set forth in the Plan and Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in the Chapter 11 Case.

12.4.5 To hear and determine any issue relating to distributions under the Plan.

12.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

12.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

12.5    *Compensation of Professionals.* To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan (whether pursuant to order of the Court, agreement, or otherwise), and to approve the reasonableness of any payments made or to be made as provided in Section 1129(a)(4) of the Bankruptcy Code. To the extent not fully paid on the Effective Date, the Reorganized Debtor (and/or its assigns) is permitted and authorized to reimburse Professionals in installments upon consent of the affected Professionals.

12.6    *Settlements.* To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtor or the Reorganized Debtor.

12.7    *Taxes.* To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor or Debtor in Possession may be liable, directly or indirectly.

12.8    *506(b), (c) Claims.* To determine the amounts, if any, of the reasonable fees, costs, and other charges payable under sections 506(b) and/or (c) of the Bankruptcy Code.

12.9     ***Specific Purposes.*** To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

12.10     ***Final Decree.*** To enter an order or final decree closing the Chapter 11 Case.

Dated: Charlotte, North Carolina
          October 9, 2024

Respectfully submitted,

**ILUMIVU, INC.**

By:     *Lauren Flickinger*
          Lauren Flickinger (Oct 9, 2024 15:39 EDT)
          Lauren Flickinger
          Chief Executive Officer

**MOON WRIGHT & HOUSTON, PLLC**

By:
          */s/ Richard S. Wright*
          Richard S. Wright (Bar No. 24622)
          212 North McDowell Street, Suite 200
          Charlotte, North Carolina 28204
          Telephone: (704) 944-6560
          Facsimile:  (704) 944-0380
          *Counsel for the Debtor*

# EXHIBIT A

**Humivity, Inc.**
**Plan Budget**

| Month | Six Weeks Ending October 31, 2024 | November |
|---|---|---|
| **Budget Week** | | |
| **Revenues** | $ 110,187 | $ 44,000 |
| **Expenses** | | |
| Payroll and Payroll Expenses | (49,849) | (43,702) |
| Technology Expenses | (9,598) | (6,981) |
| Misc. Other Expenses | (5,597) | (947) |
| Professional Fees | (55,000) | (35,000) |
| Net Ordinary Cash Flow | (9,856) | (42,630) |
| Cardiogram Payroll on Books | (43,962) | (42,929) |
| Cardiogram Payroll Reimbursement | 43,962 | 42,929 |
| Cardiogram Intercompany | - | 15,000 |
| **Net Cash Flow** | **(9,856)** | **(27,630)** |
| Beginning Cash | 41,200 | 31,344 |
| Ending Cash | $ 31,344 | $ 3,714 |

# EXHIBIT B

**Ilumivu, Inc.**
**Liquidation Analysis as of September 16, 2024**

| | Net Schedule Value as of 9/16/2024 | High Percentage Realizable | Low Percentage Realizable | High Estimated Cost | Low Estimated Cost |
|---|---|---|---|---|---|
| Net Cash and Cash Equivalents | $ 41,200 | 100% | 100% | $ 41,200 | $ 41,200 |
| | | | | | |
| Accounts receivable | 230,951 | 75% | 25% | 173,213 | 57,738 |
| Investment in Cardiogram | 3,088,000 | 25% | 5% | 772,000 | 154,400 |
| Furniture and fixtures | 17,004 | 47% | 5% | 7,992 | 850 |
| Goodwill | 550,683 | 0% | 0% | - | - |
| Pre-payments and Other Assets | 95,500 | 75% | 15% | 71,625 | 14,325 |
| Net operating loss carryforwards | 4,130,597 | 0% | 0% | - | - |
| Total assets | $ 8,153,935 | | | 1,066,030 | 268,513 |
| | | | | | |
| Less: Secured portion of secured debt | | | | (1,250,144) | (1,250,144) |
| | | | | | |
| Net assets available to Unsecured | | | | (184,114) | (981,631) |
| | | | | | |
| Costs associated with liquidation: | | | | | |
| Less: Liquidation costs (trustee fee, turnover to secured creditors) | | | | (74,622) | (18,796) |
| | | | | | |
| Estimated net available for administrative costs | | | | (258,736) | (1,000,427) |
| | | | | | |
| Bankruptcy administrative costs: | | | | | |
| Less: Chapter 7 professional fees | | | | (25,000) | (50,000) |
| Less: Chapter 11 professional and court fees | | | | (75,000) | (75,000) |
| Total | | | | (100,000) | (125,000) |
| | | | | | |
| Estimated net available for distribution to priority unsecured creditors | | | | - | - |
| | | | | | |
| Priority unsecured claims: | | | | - | - |
| | | | | | |
| Estimated net available for distribution to general unsecured creditors | | | | - | - |
| | | | | | |
| Unsecured liabilities: | | | | | |
| General unsecured liabilities | | | | (1,034,209) | (1,034,209) |
| Unsecured portion of secured debt | | | | (184,114) | (981,631) |
| Total | | | | (1,218,323) | (2,015,840) |
| Total Available after Unsecured Liabilities | | | | $ - | $ - |
| | | | | | |
| | | | | 0.0% | 0.0% |